UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

D'ONOFRIO, LOUIS                                                **JURY TRIAL DEMANDED**
    Plaintiff

v.

WESTPORT/WESTON HEALTH
DISTRICT, MARK COOPER
    Defendants

## COMPLAINT

**I.     PRELIMINARY STATEMENT**

1.     This is an action to redress the deprivation of rights secured to the Plaintiff by the Constitution and laws of the United States and the State of Connecticut. The defendant, acting through its highest policy-setting officials for the matters in question, retaliated against the Plaintiff for having exercised rights protected by the First Amendment to the United States Constitution or by Article First, Sections Three, Four and Fourteen, of the Constitution, which is invoked pursuant to this court's supplementary jurisdiction.

**II.    JURISDICTION AND VENUE**

2.     The jurisdiction of this court is founded upon 28 U.S.C. §1331, 1332 and 28 U.S.C. §1343. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district and Plaintiff resides in this district. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. §1367(a) because they are so related to the federal claims in this action and form part of the same case or controversy.

III.    **THE PARTIES**

3.    Louis D'Onofrio (hereinafter "Plaintiff") is a citizen of the State of Connecticut, who resides at 25 Hickory Drive, Westport, CT 06880.

4.    The Westport/Weston Health Department (hereafter referred to as "WWHD") is a governmental agency which provides local public health services including but not limited to, working to prevent the spread of disease in the environment, responds to local environmental emergencies, inspects, investigates and resolves nuisance complaints, provides health promotion and disease prevention, conducts planning activities to prepare for and respond to emergencies such as threats of pandemic and other hazards.

5.    Mark Cooper, at all times material herein, has been the Executive Director of WWHD.

IV.    **STATEMENT OF FACTS**

6.    Plaintiff has been employed since on or about April 2019 as the Director of Community Health.

7.    During more than two years of his employment by WWHD, Plaintiff observed continued health and safety hazards in the WWHD offices an areas of clinic patient service delivery.

8.    In particular, Plaintiff observed rodent droppings in the office and clinic areas.

9.    Plaintiff made multiple complaints to WWHD through its Executive Director Cooper regarding this health and safety hazards, however, his concerns were always disregarded.

10.     As a consequence of the lack of corrective action, Plaintiff made a complaint on or about June 24, 2019 resulting in an inspection of the WWHD premises located at 180 Bayberry Lane, Westport by Connecticut Interlocal Risk Management Agency (CIRMA).

11.     The CIRMA inspection documented multiple health and/or safety violations. Included among the findings of CIRMA was the fact that the office Material Safety Data Sheets (MSDSs) had not been updated for more than a decade.  Unlabeled bottles of chemicals were left improperly stored in areas where injury or harm could occur to staff, visitors and/or children.

12.     Even after CIRMA identified these multiple problems, Plaintiff had to continue requesting meetings with Cooper to review and resolve these concerns, all to no avail. As a result of the failure and refusal of Cooper to take action, Plaintiff took it upon himself to try  and tackle as many of the CIRMA list as possible, such as having signs placed where fire extinguishers were mounted.

13.     Plaintiff continued to observe rodent droppings, as well as the chewing by rodents of employee WWHD raincoats and jackets that are worn during inspections and left in the office.

14.     Cooper aches to deal with the problem of rodent droppings during the pandemic by printing out signs in Spanish with arrows pointing to those droppings in apparent hopes that the cleaning staff would clean those rodent droppings that were visible on office desks.

15.     On April 21, and April 23, 2021, Plaintiff spoke with a police detective and then later with the Police Chief from the Westport Police Department regarding his concerns

about possible financial mismanagement of district funds in the approximate amount o $73,000 of "unclassified" medical services.

16. On April 29, 2021, Plaintiff spoke with WWHD Board chairperson, Otis Crawford, reiterating his concerns about financial mismanagement and other health and safety concerns.

17. On or about May 5, 2021, Cooper initiated an investigation into a fictitious vaccine matter.

18. Cooper falsely claimed in writing that Plaintiff had expressed concern about missing and/or unaccounted for vaccines.

19. In support of this contrived investigation, Cooper instructed Plaintiff to provide him with a complete listing of every vaccine and number of doses of each in WWHD's vaccine stock.

20. Cooper also falsely claimed in writing that there were a number of Hep-B vaccine does recently transferred from WWHD stock.

21. Cooper instructed Plaintiff to provide him with the number of doses and where the vaccine went.

22. On or about February 2020 without prior warning, Cooper stopped Plaintiff in the hallway at the end of the work day and threatened to eliminate Plaintiff's position because, according to him, the district had lost approximately $70,000.

23. Prior to Cooper's threat of job elimination, Plaintiff had questioned him seeking an explanation for budgetary losses that Cooper had placed in the clinic "unclassified" budget section. Cooper was unable to explain to Plaintiff what this $70,000 was used for and how it had left the clinic.

24. On or about June 24, 2021, Cooper locked up Plaintiff's work materials necessary for him to utilize in the proper performance of his job as Director of Clinical Services, including the clinic policies, procedures, and outpatient licenses book.

25. On or about May 5, 2021, Cooper took away a bonus that was to have been given to Plaintiff. There was no valid cause for the removal of Plaintiff's bonus. Although the mount of the bonus was not disclosed, members of the nursing staff received bonuses in the amount of $1,000. The decision to grant bonuses to the clinical staff was made by the WWHD board in recognition of their service during the pandemic.

26. On June 16, 2021, Plaintiff submitted a letter of resignation, because of the intolerable condition of being required to continue to work in a setting that was hazardous to health and safety of himself, co-workers, and members of the public who frequented the agency offices.

## **CAUSES OF ACTION**

**COUNT ONE**:   **42 U.S.C. § 1983 (FIRST AMENDMENT TO THE U.S. CONSTITUTION) (As to Mark Cooper)**

1 – 26.   Plaintiff incorporates paragraphs 1-26 as if fully stated herein and makes them paragraphs 1-26 of this Count One.

27. Defendant's conduct as alleged was because of Plaintiff engaging in protected free speech rights to which he was entitled under the First Amendment to the U.S. Constitution as enforced by §1983.

28. Plaintiff has been damaged thereby.

**COUNT TWO:** **CONNECTICUT GENERAL STATUTES § 31-51q) (As to Westport/Weston Health District)**

1 – 26. Plaintiff incorporates paragraphs 1-26 as if fully stated herein and makes them paragraphs 1-26 of this Count Two.

27. Defendant's conduct as alleged was because of Plaintiff engaging in protected free speech rights to which he was entitled under C.G.S. § 31-51q.

28. Plaintiff has been damaged thereby.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and requests the following relief:

(1) A declaratory judgment that Defendant violated 42 U.S.C. Section 1983 and C.G.S. Section 31-51q.

(2) A permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of 42 U.S.C. Section 1983 and C.G.S. Section 31-51q.

(3) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for his unlawful constructive discharge, and all fringe and pension benefits of employment, with prejudgment interest thereon.

(4) Compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages.

(5) Punitive damages.

(6) Attorneys' fees and costs; pursuant to 42 U.S.C. Section 1988, and C.G.S. Section 31-51q.

FOR THE PLAINTIFF
BY:/S/ Josephine S. Miller
Josephine S. Miller, Fed Bar # ct27039
130 Deer Hill Avenue, Unit 13
Danbury, CT   06810
Tel:  (203) 512-2795
Email:  jsmillerlaw@gmail.com